# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TITLEMAX OF DELAWARE, INC.<br><br>    Plaintiff,<br><br>v.<br><br>WENDY SPICHER, in Her Official Capacity as Secretary of the Pennsylvania Department of Banking and Securities,<br><br>    Defendant. | C.A. No. 1:24-cv-00930-GBW |

### DECLARATION OF CHRISTOPHER DUNN IN SUPPORT OF PLAINTIFF TITLEMAX OF DELAWARE, INC.'S <u>MOTION FOR A PRELIMINARY INJUNCTION</u>

I, Christopher Dunn, affirm the following under penalty of perjury:

1.   I serve as District Director of Operations, Corporate Representative and am legally employed by CCFI Companies, LLC. In that position, I support and am familiar with the business operations of TitleMax of Delaware, Inc. ("TitleMax of Delaware").

2.   I am over the age of 18, competent to testify, and have knowledge of the facts set forth herein, whether gained by my own personal knowledge or as a corporate representative through the review of business records, practices, or other efforts, and, if called as a witness, could and would testify to them.

3.   I have worked for various now-affiliates of CCFI since 2017. In April 2024, following the October 2023 acquisition of TMX Finance LLC, the parent of TitleMax of Delaware, by a subsidiary of CCFI Intermediate Holdings LLC, my employer became CCFI Companies, LLC. CCFI Companies, LLC is an affiliate of TitleMax of Delaware.

4.   My current duties as District Director of Operations, Corporate Representative include various legal operations tasks, such as responding to subpoenas, managing insurance

1

claims, handling escalated customer complaints, assisting with document production and review, and assisting with discovery.

5. TitleMax of Delaware, Inc. ("TitleMax of Delaware") is a lender that is registered to do business in Delaware and licensed to do business in Delaware. TitleMax of Delaware maintains a registered agent in Delaware. TitleMax of Delaware's business activities occur from its brick-and-mortar stores located exclusively within Delaware.

6. TitleMax of Delaware's operations occur entirely outside of Pennsylvania.

7. TitleMax of Delaware is incorporated in Delaware. TitleMax of Delaware's principal place of business is located in Savannah, Georgia.

8. TitleMax of Delaware was formed in September 2012. By October 2017, TitleMax of Delaware had grown its operations to include 15 employees, all of whom were located in Delaware.

9. TitleMax of Delaware offers installment loan products secured by a borrower's motor vehicle. These are known as "Title Secured Loans." All of those loans are offered exclusively from TitleMax of Delaware's brick-and-mortar stores inside Delaware. The only way to obtain TitleMax of Delaware's Title Secured Loans is for a borrower to physically enter a TitleMax of Delaware brick-and-mortar store located in Delaware and enter into a loan agreement that is executed and originated in the store.

10. Beginning in 2019, TitleMax of Delaware began offering unsecured personal loan products. These loan products can be obtained in-store or online. But no matter how the loans are obtained, they are originated in Delaware.

11. Each of TitleMax of Delaware's loan agreements are governed by Delaware law. TitleMax of Delaware's loan agreements comply with Delaware law. TitleMax of Delaware's loan agreements also clearly disclose that they are governed by Delaware law.

12. TitleMax of Delaware has (a) never had offices in Pennsylvania; (b) never had employees officed in Pennsylvania; (c) never had agents in Pennsylvania; (d) never been registered to do business in Pennsylvania; (e) never owned or leased property in Pennsylvania; (f) never held a bank account in Pennsylvania; (g) never used employees or agents to solicit Pennsylvania business; (h) never held a certificate or license to do business in Pennsylvania; and (i) never intentionally advertised or marketed toward Pennsylvania consumers.

13. TitleMax of Delaware prohibits, and has always prohibited, the origination of loans in Pennsylvania. TitleMax of Delaware does not, and never has, had employees officed in Pennsylvania. TitleMax of Delaware does not, and never has, disbursed funds to borrowers physically present in Pennsylvania at the time that those funds were received. Such disbursements to borrowers are not (and never have been) processed in Pennsylvania, sent to bank branches in Pennsylvania, or deposited with bank branches in Pennsylvania.

14. TitleMax of Delaware has never solicited consumers inside Pennsylvania to come to Delaware to obtain loans. TitleMax of Delaware has never targeted advertising or marketing at consumers inside Pennsylvania.

15. TitleMax of Delaware has taken affirmative steps to bar Pennsylvania consumers from viewing TitleMax of Delaware's loan products online or obtaining loans from TitleMax of Delaware online. Specifically, when a Pennsylvania consumer visits the TitleMax website and fills out the required information to "GET STARTED," the Pennsylvania consumer is informed, "Unfortunately, we do not have a product to offer you at this time.* Please call us at 1-888-485-

3629 if you have any questions." *See* TitleMax, https://www.titlemax.com. The asterisk text advises the borrowers, "We don't do business in all states. Customers may have to travel to a neighboring state to do business with us . . . " *See* TitleMax, https://www.titlemax.com.

16. With respect to unsecured personal loans that can be made online by TitleMax of Delaware, those loans are not processed if the borrower is not physically present in Delaware at the time of loan origination. TitleMax of Delaware verifies the borrower's physical presence by requiring that the borrower provide a Delaware home address and either (a) turn on GPS location services on the device they are using to request the loan; or (b) affirm that they are physically present in Delaware at the time of loan execution.

17. The only permissible way a Pennsylvania consumer could obtain a Title Secured Loan from TitleMax of Delaware is to travel from Pennsylvania to Delaware, enter a brick-and-mortar TitleMax of Delaware store in Delaware, request a loan, obtain the loan, and execute a loan agreement in the store. For unsecured personal loans, the borrower would have to be physically present in Delaware at the time of loan origination to obtain the loan (or knowingly lie).

18. The first attempt by the Commonwealth of Pennsylvania's Department of Banking and Securities (the "Department") to contact TitleMax of Delaware occurred, to TitleMax of Delaware's knowledge, on December 20, 2016, when an investigator working for the Department sent an e-mail to a corporate affiliate of TitleMax of Delaware, advising that the Department had "concerns TitleMax may be operating in violation of the CDCA." The Department then sent a letter on January 4, 2017, to TitleMax of Delaware's principal business address attaching the December 20, 2016 e-mail.

19. During a subsequent late January 2017 phone call, the Department inquired about the titlemax.com website and whether it marketed to Pennsylvania consumers; the website was then, and has always been, the operative website for TitleMax of Delaware (and other affiliates). A corporate representative speaking on behalf of various TitleMax entities explained that if a Pennsylvania consumer inputs a Pennsylvania zip code into the consumer interface portal on titlemax.com, the website would return a message immediately advising the consumer, "Unfortunately, we do not have a product to offer you at this time." The Department requested that this prompt be made more specific. At this time, the corporate representative advised the Department that it lacked jurisdiction over the website.

20. The Department's written communications and phone call prompted a revision to the titlemax.com website that services TitleMax of Delaware so that it added "customers may have to travel to a neighboring state to do business with" a TitleMax entity. The Department stated that this change mitigated its concerns.

21. On or around August 22, 2017, a subpoena (the "August 2017 Subpoena") was mailed to TitleMax of Delaware's principal business address by the Department. The August 2017 Subpoena was addressed to "TitleMax, TMX Finance | Family of Companies." "TitleMax, TMX Finance" is not a legal entity. The "Family of Companies" or "TitleMax Family of Companies" is not a legal entity. The August 2017 Subpoena did not identify TitleMax of Delaware as a recipient.

22. In a direct response to the August 2017 Subpoena, TitleMax of Delaware made significant changes to its Delaware business operations, including by (a) prohibiting origination of loans to Pennsylvania consumers, even though those consumers had to physically come to TitleMax of Delaware brick-and-mortar stores in Delaware to obtain loans; (b) ceasing all debt

5

collection efforts with respect to loans made to Pennsylvania borrowers, even though those loans were made in and originated in Delaware; (c) stopping the placement of calls from Delaware to Pennsylvania-based borrowers, including simple "payment reminder" calls; and (d) implementing a policy prohibiting mailing collection letters into Pennsylvania.

23. These business operational changes in Delaware caused a reduction in TitleMax of Delaware's revenues.

24. These business operational changes that were made in response to the August 2017 Subpoena are in effect today. Thus, today, TitleMax of Delaware does not make loans to Pennsylvania consumers who visit its brick-and-mortar stores in Delaware. And since 2015, TitleMax of Delaware has had a policy prohibiting initiating repossession of vehicles inside Pennsylvania for Pennsylvania borrowers who have defaulted on their accounts.

25. TitleMax of Delaware briefly suspended these changes between approximately December 2020 and January 2022, a period of time during which a federal court had ruled that the Department's subpoena was unconstitutional, but immediately reinstituted the policies that banned origination, collection, and servicing on Pennsylvania borrower accounts when that decision was reversed on appeal in direct response to the Department's renewed regulatory efforts.

26. On June 7, 2024, the Department issued another subpoena, which again was mailed to TitleMax of Delaware's principal business address in Savannah, Georgia (the "June 2024 Subpoena"). Soon thereafter, on June 14, 2024, the Department issued an "Order to Show Cause," which was also mailed to TitleMax of Delaware's principal business address in Savannah, Georgia. Neither the June 2024 Subpoena nor the Order to Show Cause were served on or otherwise provided to TitleMax of Delaware's registered agent in Delaware.

27. The June 2024 Subpoena and the Order to Show Cause were also e-mailed to a lawyer at the law firm of Holland & Knight LLP. Holland & Knight LLP did not accept service of the June 2024 Subpoena or the Order to Show Cause and was not authorized to do so with respect to either.

28. The June 2024 Subpoena and Order to Show Cause were addressed to the "Legal Department" of "Community Choice Financial Family of Brands | TitleMax." "Community Choice Financial Family of Brands" is not a legal entity. "TitleMax" is not a legal entity.

29. Only a single copy of the Order to Show Cause was mailed to TitleMax of Delaware's principal place of business in Savannah, Georgia.

30. The Department's August 2017 Subpoena, June 2024 Subpoena, and Order to Show Cause have resulted in substantial business and financial impacts for TitleMax of Delaware in Delaware. In addition to the operational changes detailed above that resulted in the change to the TitleMax.com website and from the August 2017 Subpoena, the Department now demands documents through the June 2024 Subpoena that may be stored or may have been created in Delaware. Additionally, TitleMax of Delaware has had to hire lawyers in Delaware to respond to the Department's June 2024 Subpoena and Order to Show Cause.

31. Because the Department's activity directed at Delaware has caused TitleMax of Delaware to forgo servicing and collection efforts with respect to Pennsylvania borrower accounts where the loans were made outside the territorial borders of Pennsylvania in other states, TitleMax of Delaware has suffered a material loss in revenue, even though it had reasonable expectations that it would recover on these accounts, given that the contracts at issue were binding, valid, and enforceable contracts.

Pursuant to 28 U.S.C. § 1746(2), I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on: September 24, 2024

*[signature]*

Christopher Dunn